El Pueblo de Puerto Rico, demandante y apelado, *v.* José Antonio Rodríguez Santiago, acusado y apelante.

Núm. 13478.—*Sometido:* Enero 10, 1949. *Resuelto:* Febrero 4, 1949.

*José Rafael Gelpí*, abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco* (*Luis Negrón Fernández, Ex Procurador General*, en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

José Antonio Rodríguez fué juzgado ante un jurado de la Corte de Distrito de Mayagüez de un delito de asesinato en segundo grado. La corte instruyó al jurado que podía rendir uno de estos tres veredictos: culpable de asesinato en segundo grado o de homicidio voluntario o no culpable. Esto no obstante, el jurado, después de deliberar, rindió un veredicto de culpable de homicidio involuntario. La corte no aceptó este veredicto por considerarlo erróneo, instruyó al jurado de nuevo en cuanto a los veredictos que podían rendir y le ordenó regresara al cuarto de deliberaciones para que reconsiderara el veredicto. Así lo hizo el jurado y más tarde rindió un veredicto declarando al acusado culpable del delito de homicidio voluntario. Aceptado por la corte declaró al acusado convicto de dicho delito. El acusado solicitó el beneficio de la ley sobre sentencias probatorias y la corte ordenó que el oficial probatorio efectuara la investigación correspondiente. Rendido el informe por dicho funcionario la corte dictó sentencia condenando al acusado a cumplir una

sentencia indeterminada de tres a cinco años de presidio y al mismo tiempo suspendió los efectos de dicha sentencia, poniendo al acusado en libertad a prueba bajo ciertas condiciones. No conforme apeló el acusado y sostiene que la corte inferior erró al rechazar el veredicto de homicidio involuntario rendido por el jurado, al instruir al jurado sobre el alcance del artículo 288 del Código de Enjuiciamiento Criminal y al imponerle una sentencia indeterminada y al mismo tiempo en probatoria.

Este recurso se ha tramitado utilizando el procedimiento de la Exposición del Caso y no el de la Transcripción de la Evidencia. De dicha Exposición aparece que las partes no solicitaron que se dieran al jurado instrucciones adicionales a las que ya había dado la corte en cuanto al veredicto que, de acuerdo con la prueba, podían rendir en el caso. Hasta el momento de retirarse a deliberar el jurado por primera vez, el acusado no había solicitado que se le instruyese que podía rendir un veredicto de homicidio involuntario. Fué después que el jurado rindió un veredicto de culpabilidad por dicho delito, el cual no admitió la corte basándose en el artículo 288 del Código de Enjuiciamiento Criminal, que la defensa, por primera vez, solicitó una instrucción sobre homicidio involuntario y la corte la denegó.

El artículo 288 del Código de Enjuiciamiento Criminal dispone lo siguiente:

"Cuando ocurriere un veredicto de culpabilidad y el tribunal fuere de opinión que se ha equivocado el jurado en la aplicación de la ley, podrá explicar al jurado sus razones para sustentar dicha opinión, u(¹) ordenarle que vuelva a considerar el veredicto; y si después de esto diere el mismo veredicto, deberá hacerse constar en autos; pero en el caso de que el veredicto fuere absolutorio, no podrá el tribunal requerir al jurado para que lo vuelva a considerar.

"Si el jurado pronunciare un veredicto que no fuere ni general ni especial, podrá el tribunal ordenarle que lo considere nuevamente, y no se tomará razón de él, mientras no estuviere formulado en términos claros y precisos."

" (¹)Véase el texto inglés." El texto inglés dice: "y".

El procedimiento seguido por la corte sentenciadora se ajustó a las disposiciones de la ley. *Pueblo* v. *Dones,* 56 D.P.R. 211, 223; *Pueblo* v. *Alvarado,* 49 D.P.R. 423. El veredicto de homicidio involuntario era completamente erróneo y no se ajustaba a las instrucciones que la corte había transmitido al jurado. Hemos examinado la prueba presentada en este caso y a nuestro juicio la corte no erró al dar sus instrucciones originales y tampoco al negarse a dar la instrucción sobre homicidio involuntario tardíamente solicitada por el acusado. No se cometió el primer error.

■ Por el segundo sostiene el apelante que la siguiente instrucción, dada por la corte en relación con el artículo 288, supra, es errónea:

"La corte creía innecesaria esa instrucción luego de haberle leído el artículo 288; pero la Corte les va a dar la instrucción.

"Ustedes pueden, desde luego, a pesar de que la Corte les ha instruído que 'ustedes están equivocados, que ustedes no han aplicado la ley como debe aplicarse, traer el mismo veredicto de Homicidio Involuntario. Si ustedes, desoyendo las instrucciones de la Corte, traen el mismo veredicto de Homicidio Involuntario, la Corte no tendrá más remedio sino hacerlo constar en autos porque así lo dispone expresamente el artículo 288 del Código de Enjuiciamiento Criminal. De modo que con esta advertencia y con las instrucciones que a petición de la defensa acabo de dar en cuanto a que de acuerdo con el artículo 288 ustedes pueden rendir el mismo veredicto, pueden retirarse y continuar deliberando."

El apelante no impugnó esta instrucción, no solicitó su reconsideración y tampoco la excepcionó. No consideramos que la misma perjudicara los derechos del acusado y, por tanto, no puede ahora en apelación quejarse por primera vez. *Pueblo* v. *Millán,* 66 D.P.R. 243, 255; *Pueblo* v. *Díaz,* 63 D.P.R. 987.

■■ Por el tercer señalamiento se sostiene que la corte erró al imponerle al acusado una sentencia indeterminada y al mismo tiempo en probatoria.

A petición del fiscal y por no aparecer claramente de la exposición del caso la forma en que se dictó la sentencia en

este caso, admitimos una transcripción certificada que contiene la sentencia dictada por la corte y la cual, en lo pertinente, dice así:

". . . la corte . . . condena al acusado José Antonio Rodríguez Santiago a una pena indeterminada de tres a cinco años de presidio, con trabajos forzados.

"Habiendo el Oficial Probatorio del tribunal rendido informe favorable a la petición del acusado para acogerse a los beneficios de la Ley de 3 de abril de 1946, que estatuye el sistema de sentencias suspendidas en Puerto Rico, y habiendo a su vez la corte aprobado dicho informe, en este acto se decreta y ordena la suspensión de los efectos de la sentencia de tres a cinco años de presidio que acaba de serle impuesta a este acusado José Antonio Rodríguez Santiago, quedando dicho José Antonio Rodríguez Santiago, tal como lo recomienda el Oficial Probatorio en su informe, bajo un régimen probatorio durante el período de tres años, sujeto a las siguientes condiciones: [se especifican]".

El artículo 1 de la Ley núm. 295, estableciendo la sentencia indeterminada en Puerto Rico, aprobada el 10 de abril de 1946 (Leyes de 1946, pág. 759) dispone:

"Por la presente se establece la sentencia indeterminada en Puerto Rico; *Disponiéndose,* que, cuando los tribunales condenaren a un reo a cumplir sentencia por delito grave, que no apareje pena de reclusión perpetua, fijarán una sentencia indeterminada y no fijarán límite específico de duración a la sentencia, sino que ordenarán la reclusión del reo por un término que no podrá ser en ningún caso menor que el· término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito; *Disponiéndose, además,* que en aquellos casos en que la ley no disponga término mínimo o máximo, el tribunal sentenciador fijará dicho término mínimo o máximo."

De acuerdo con esta disposición las cortes, mandatoriamente, tienen que imponer una sentencia indeterminada al condenar a una persona por delito grave, que no apareje reclusión perpetua. La corte cumplió con la ley porque impuso una sentencia indeterminada de tres a cinco años de presidio, ya que no fijando el artículo 204 del Código Penal

un término mínimo para el delito de homicidio voluntario estaba autorizada a fijar dicho mínimo en tres años. También estaba dentro de su discreción fijar el máximo en cinco años. *McDonald* v. *Johnston,* 86 F.2d 329; *Pointer* v. *State,* 205 N. W. 574; *Rogers* v. *State,* 83 So. 359.

■ Tampoco erró la corte al suspender los efectos de dicha sentencia indeterminada y poner al apelante bajo probatoria durante tres años bajo ciertas condiciones. Estaba autorizada para hacerlo por la Ley núm. 259 aprobada el 3 de abril de 1946 (Leyes de 1946, pág. 535) sobre sentencias probatorias. Después de haberse cerciorado de que concurrían las condiciones que exige el artículo 2 de dicha ley, su actuación fué discrecional. *Pueblo* v. *Marrero,* 68 D.P.R. 924; *Pueblo* v. *Feliciano,* 67 D.P.R. 247; *Pueblo* v. *Emmanuelli,* 67 D.P.R. 667.

Arguye el apelante que una vez que el tribunal optó por darle el beneficio de la ley sobre sentencias probatorias, no podía aplicar a dicha sentencia las disposiciones de la ley sobre sentencias indeterminadas. No tiene razón. Ya hemos dicho que desde la aprobación de la Ley núm. 295, supra, toda sentencia dictada en casos graves debe ser con carácter indeterminado, excepto cuando el delito apareje reclusión perpetua. Esa sentencia indeterminada es la que luego la corte puede suspender poniendo al acusado a prueba, durante el tiempo y bajo las condiciones que la corte, en su discreción, considere propios de acuerdo con las circunstancias concurrentes en cada caso. Y eso fué lo que la corte inferior hizo en el presente. La contención del apelante no está sostenida por los autos. La corte no dictó primero una sentencia probatoria para luego aplicarle las disposiciones de la ley sobre sentencias indeterminadas. Fué a la inversa. Se le impuso una sentencia indeterminada y luego se suspendió su efecto y se puso al acusado bajo prueba.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. Negrón Fernández no intervino.