JORGE LUIS SÁNCHEZ MONTALVO, peticionario, *v.* JUAN F. ANGELI, Alcaide del Campamento de Guavate, demandado.

Número 766.

*Sometido:* 12 de noviembre de 1957. *Resuelto:* 21 de noviembre de 1957.

*Francisco Ponsa Feliú,* abogado de oficio del peticionario; *Hon. Secretario de Justicia J. B. Fernández Badillo, Arturo Estrella, Secretario Auxiliar* y *Alfredo Archilla Guenard, Fiscal del Tribunal Supremo,* abogados del demandado.

PER CURIAM: En 5 de diciembre de 1949 el peticionario fué sentenciado a cumplir una pena indeterminada de 14 a 15 años de presidio por un delito de escalamiento en primer grado subsiguiente. Expedimos un auto de hábeas corpus para determinar la validez de la ameritada sentencia.

▆▆ El delito de escalamiento en primer grado se castiga con pena de presidio de uno a quince años. Art. 410 del Código Penal, 1937 (33 L.P.R.A., sec. 1593). Cuando es en grado de subsiguiente, el reo es castigado con pena de reclusión en su grado máximo, o sea, quince años de presidio. Art. 57(2) del Código Penal, 1937 (33 L.P.R.A., sec. 132).[1] *Morales* v. *Saldaña,* 63 D.P.R. 59. El Código, por tanto, establece un término fijo y específico de reclusión para el delito de escalamiento en primer grado subsiguiente. En otras ocasiones hemos dicho que el calificativo de "subsiguiente" antepuesto a la denominación de un delito no altera los elementos constitutivos del mismo y que sólo afecta la discreción del juez al imponer la sentencia. *Pueblo* v. *Cancio,* 53 D.P.R. 547. En *González* v. *Rivera, Jefe Penitenciaría,* 71 D.P.R. 786, dijimos a la página 787: "La alegación de que el acusado ha sido convicto previamente de otro delito no constituye la imputación de un delito en sí. Ella se hace con el propósito único de que el caso

---

[1] Dicho artículo dispone:

"Todo reo convicto de hurto de menor cuantía, o tentativa de cometer algún delito que, de llevarse a cabo, aparejaría pena de presidio, si cometiere cualquier delito después de dicha convicción, será castigado según se expresa a continuación:

"1. .     .     .     .     .     .     .     .

"2. Si el subsiguiente delito fuere de tal naturaleza que, en primera convicción, aparejaría pena de presidio temporal, dicho reo será castigado con pena de reclusión temporal en su grado máximo, convicto que fuere del delito por primera vez."

(33 L.P.R.A., sec. 132, págs. 759–60.)

caiga dentro del estatuto y a fin de que se imponga al acusado la pena más severa fijada por aquél. (Citas)." El delito cometido por el peticionario fué pues, el de escalamiento en primer grado. Debemos determinar en primer lugar, cuál es hoy en día la pena prescrita cuando el reo es convicto de dicho delito en grado subsiguiente.

■■ Desde que está en vigor la Ley de Sentencias Indeterminadas—34 L.P.R.A., sec. 1024—, (²) los jueces carecen de facultad para imponer sentencias con límite de duración específica. Estas disposiciones de la referida ley son mandatorias. *Pueblo* v. *Rodríguez*, 69 D.P.R. 546; *Pueblo* v. *Luciano*, 77 D.P.R. 597. Convenimos con el abogado del peticionario en que mientras el art. 57(2) del Código Penal señala una pena fija para el delito de escalamiento en primer grado subsiguiente, la Ley de Sentencias Indeterminadas ordena la imposición de una sentencia que no tendrá límite de duración específico en todo delito grave que no apareje reclusión perpetua, resultando un conflicto irreconciliable entre ambos estatutos. Sin embargo, el citado artículo 57(2) del Código Penal no ha quedado derogado implícitamente en su totalidad según arguye el apelante. Puede y debe darse efectividad en parte a dicho precepto, cuyo fin es, según hemos visto, el de imponer una pena más severa al reincidente.

Esto se logra mediante la imposición de un término máximo que nunca debe ser menor del máximo—pena fija— señalada en el inciso 2 del susodicho art. 57 y un término

---

(²) Dicha ley dispone:

"Por la presente se establece la sentencia indeterminada en Puerto Rico; *Disponiéndose*, que, cuando los tribunales condenaren a una persona a cumplir sentencia por delito grave, que no apareje pena de reclusión perpetua, dictarán una sentencia indeterminada que no tendrá límite de duración específico, pero en ningún caso la reclusión podrá ser menor del término mínimo provisto en la ley para el delito cometido, ni mayor que el término máximo que se señala para dicho delito; *Disponiéndose, además*, que en aquellos casos en que la ley no disponga expresamente término mínimo o máximo, el tribunal sentenciador fijará dicho término mínimo o máximo."

mínimo no menor que el señalado por el Código Penal para el delito de escalamiento en primer grado. En esta forma se da cumplimiento a la Ley de Sentencias Indeterminadas y al mismo tiempo se castiga más severamente el delito de escalamiento en primer grado subsiguiente.

El juez sentenciador entendió, según lo estamos resolviendo ahora, que a pesar de las disposiciones del art. 57(2), él venía obligado a imponer al acusado, aquí peticionario, una sentencia indeterminada, y así lo hizo, condenándole a sufrir de 14 a 15 años de reclusión en el presidio. Computados estos términos, luego de hacer las rebajas correspondientes, [3] los mismos quedan reducidos así: el mínimo de 14 años, a ocho años, once meses y veinticinco días; y el término máximo de 15 años, se reduce a nueve años, dos meses y dos días. Una vez hecho este cómputo el margen existente entre el término mínimo y el término máximo es de solamente dos meses y siete días. Sin lugar a dudas un margen de fluctuación tan pequeño frustra por completo los fines perseguidos en la Ley de Sentencias Indeterminadas. [4]

---

[3] Véase Ley núm. 180 de 1943 (Leyes de Puerto Rico, pág. 653) y *Pueblo* v. *Tribl. Superior*, 78 D.P.R. 143.

[4] La Exposición de Motivos adicionada a dicha Ley por la Ley núm. 176 de 1949, dispone:

"Para que la pena sirva su función eminentemente social de proteger a la sociedad contra el peligro del delincuente, resulta absolutamente indispensable que las cortes dicten sentencias que permitan a las autoridades penales dos cosas: (1) poder descubrir en cada caso en qué consiste el peligro del delincuente y (2) poder disponer del tiempo suficiente para eliminar dicho peligro mediante un tratamiento constructivo. Para ello tiene que haber una relación directa entre la duración ·de la sentencia que se imponga y el problema del delincuente.

"Para facilitar este propósito se establece en Puerto Rico la sentencia indeterminada, que al permitir que se impongan sentencias con un margen de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto que se pueda imponer, permitirán distinguir entre los distintos delincuentes durante la etapa de su reclusión en el penal y, en su consecuencia, éstos podrán ir recobrando su libertad según vayan evidenciando una reacción favorable al proceso de su rehabilitación. En esta forma evitamos, en interés de un mejor servicio a· la comunidad, que el delincuente que se ha reformado sea retenido en el penal por

**158**

Ya en el caso de *Pueblo* v. *Tribunal Superior*, 78 D.P.R. 143,([5]) habíamos previsto una situación como la de este caso, en que el término mínimo fijado sea tan alto que de hecho convierta la sentencia en fija, o no permita un margen de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto que se pueda imponer, violándose así el principio de la indeterminación.

La sentencia impuesta al peticionario viola ese principio, y es, por tanto nula.

El peticionario será resentenciado por el tribunal donde se juzgó su causa, en armonía con los principios expuestos en esta opinión, debiendo fijarse en la sentencia indeterminada que se dicte un término máximo de 15 años de reclusión y un término mínimo lo más bajo posible pero no menor que el término mínimo fijado por ley para el delito de escalamiento en primer grado.

más tiempo del necesario e igualmente, pero a la inversa, se evitará que un delincuente salga del penal siendo aún un peligro para la comunidad. "La sociedad debe disponer del tiempo necesario para controlar la conducta del delincuente mientras éste necesita de ese control para corregirse. Esto sólo puede lograrse con una sentencia que permita aplicar las soluciones convenientes a los distintos casos que surjan. Para ello se establece la sentencia indeterminada."

([5]) A los fines de resolver este recurso es innecesario reexaminar la doctrina del caso de *El Pueblo* v. *Tribl. Superior*, supra.